UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

NYZIER FOURQUREAN,

        Plaintiff,

vs.

CASE NO. _25-68_____

NATIONAL COLLEGIATE
ATHLETIC ASSOCIATION,

        Defendant.

---

## COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF

1.     Plaintiff Nyzier Fourqurean brings this action to challenge Bylaws 12.8.1 (the "Five-Year Rule"), 12.02.6 (the "Intercollegiate Competition Rule"), and 14.3.3 (the "Three Year Transfer Limitation") of Defendant, the National Collegiate Athletic Association ("NCAA"). These bylaws relate to the number of years college football players can play Division I NCAA football after transferring to an NCAA Division I school.  This action seeks declaratory and injunctive relief against the defendant, in addition to other remedies.

### PARTIES

2.     Plaintiff Nyzier Fourqurean is a college football player at the University of Wisconsin, Madison ("UW-Madison") and resides in Madison, Dane County, Wisconsin.

3.     In 2020, he attended Grand Valley State University ("GVSU"), a Division II school in Michigan, to play college football.  His initial enrollment at GVSU was the 2020-2021 academic year (football season cancelled due to COVID-19 restrictions) and he remained enrolled there until he transferred to the UW-Madison, a Division I school, in May of 2023.

4. Defendant NCAA is an unincorporated association that acts as the governing body of college sports. The NCAA includes more than 1,100 member colleges and universities throughout the United States, including institutions in Dane County, Wisconsin. These member institutions are organized into three divisions, and Division I includes more than 350 schools.

5. Through the NCAA Constitution and Bylaws, the NCAA and its members have adopted regulations governing all aspects of college sports, including specifically, the Bylaws at issue in this case, Division I Bylaws 12.8, 12.02.6, and 14.3.3. Relevant excerpts, attached as **Exhibit A**.

6. The NCAA Constitution and Bylaws were adopted by votes of the member institutions and various NCAA councils, and they may be amended by votes of the member institutions or NCAA councils. Thus, the rules set forth in the NCAA Constitution and Bylaws constitute horizontal agreements between the NCAA and its member institutions and among NCAA member institutions.

7. As a practical matter, an academic institution that wishes to participate in any meaningful way in the highest and most popular level of collegiate athletics must maintain membership in the NCAA and abide by the Division I rules and regulations promulgated by the NCAA and its members. Failure to abide by these rules and regulations risks subjecting sports programs at the academic institution to punitive measures from the NCAA.

8. The NCAA and its member institutions control the highest and most popular level of collegiate athletics. Therefore, any individual who wishes to derive the substantial benefits from competing at the highest level of collegiate athletics must by necessity attend an NCAA Division I member institution.

9. There are no practical alternatives that can provide the unique combination of

attributes offered by Division I NCAA athletic schools including: (i) high quality academic educational services, (ii) top-of-the-line training facilities, (iii) best-in-class coaches, (iv) exposure to scouts, agents and team representatives that provide the athlete with the best chance to launch into professional careers, (v) national publicity through national championships and nationwide broadcasting contracts, and perhaps most importantly, (vi) opportunities to profit from NIL agreements and significant revenue sharing, and (vii) competition at the highest level of collegiate athletics.

10.     If he is not granted at least another year of eligibility, plaintiff must declare for the NFL draft on or before February 7, 2025, if he intends to play professional football for the 2025-2026 season.

11.     For a variety of reasons, including the opportunity to continue to profit from the NIL, significant revenue sharing, and other opportunities unique to Division I athletics, plaintiff would rather return to UW-Madison to play Division I football.

12.     Plaintiff has been offered the opportunity to return to Division I football by UW-Madison but the NCAA's Decision issued today denies him that opportunity.

13.     The NCAA's Decision denying the waiver causes him significant harm and constitutes of violation of Bylaw 12.8.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over the federal claim asserted pursuant to 28 U.S.C. §1331 and ancillary jurisdiction over the remaining state claims.

15.     This Court may exercise specific personal jurisdiction over Defendant NCAA in Dane County, Wisconsin based on its contacts with Wisconsin and related to its activities in Wisconsin through its guidelines and bylaws for college football purposefully directed at

Wisconsin. Defendant and its member institutions conduct athletic competitions, ticket and merchandise sales, television agreements, and other significant revenue-generating activities in Dane County, Wisconsin.

16.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2).

## BACKGROUND FACTS

17.     Plaintiff initially enrolled at Grand Valley State University (GVSU) in Fall 2020.

18.     As a result of strict COVID-19 restrictions, Grand Valley State University's 2020-2021 football season was canceled, including all practices during the fall semester of 2020, and limited socially distanced practice opportunities during the spring semester of 2021.

19.     In addition to the challenges of a global pandemic, plaintiff's father tragically passed away in the summer of 2021 resulting in him missing important weeks of off-season training.

20.     Combining the setback in summer training/conditioning, the death took a toll on plaintiff mentally as he prepared for his first season of collegiate-level football and his first significant return to football since his senior year of high school in 2019.

21.     While plaintiff played during the 2021-2022 football season at GVSU, he competed in only 11 contests with only 155 total snaps/reps.

22.     While plaintiff transitioned to UW-Madison in May 2023 to play Division I, his current teammates and other Division I football student-athletes gained valuable development through the utilization of NCAA Division I Bylaw 12.8.3.1.6 ("In football, a student-athlete representing a Division I institution may compete in up to four contests in a season without using a season of competition") and competed during the 2020 COVID season resulting in a 6th season

- 4 -

of eligibility during the 2025 season. Plaintiff had no similar opportunity in Division II, even though he played the equivalent of only three games in the 2021-2022 season.

23.     Moreover, as a Division II athlete between 2021-2023, Plaintiff had no opportunity similar to Division I athletes to capitalize on his Name, Image and Likeness ("NIL") rights, or to participate in significant revenue sharing.

24.     In a landmark 2021 decision, *NCAA v. Alston*, 594 U.S. 69 (2021), a unanimous U.S. Supreme Court gutted the prior restraint on what a college athlete could receive.

25.     While courts had previously deferred to anticompetitive NCAA rules to protect "amateurism" in the NCAA, when "market realities change, so may the legal analysis," and "the market realities [of college sports] have changed significantly since 1984." *Id*., 594 U.S. at 98.

26.     Reacting to the Supreme Court's ruling in *Alston*, the NCAA lifted its prohibition on NCAA athletes receiving NIL Compensation on July 1, 2021.  In reality, such opportunities are only meaningfully available to Division I athletes.

27.     Plaintiff recently completed his ninth semester and will graduate from the University of Wisconsin on December 15th with a degree in Consumer Behavior and Marketplace Studies.

28.     On December 6, 2024, UW-Madison submitted a request for a waiver to the NCAA, seeking a determination that plaintiff be permitted to play another season at UW-Madison.

29.     The NCAA issued a formal Decision denying the waiver today, January 29, 2025.

30.     Plaintiff seeks relief from this court to enjoin the NCAA from enforcing its Five-Year Rule as it pertains to the facts of this case, as enforcement would violate Section 1 of the

Sherman Act by preventing plaintiff from competing in a third and fourth year of NCAA Division I football in 2025, due to his prior attendance at a Division II school from 2021-2023.

## COUNT I:
## *PER SE* VIOLATION OF § 1 OF THE SHERMAN ACT, 15 U.S.C. § 1

31.     Plaintiff incorporates by reference every allegation contained in this Complaint.

32.     Defendant has a dominant position in the relevant market, and in fact makes the market.

33.     Defendant's contracts, combinations, and relationships consist of a continuing agreement, understanding, and concert of action among the defendant and its members, vendors, and customers, the substantial terms of which are to artificially fix, decrease, maintain, and/or restrict the amount of college athletic services in the United States, its territories and possessions.

34.     Simultaneously, defendant's contracts, combinations, and relationships consist of a continuing agreement, understanding, and concert of action among the defendant and its members, vendors, and customers, the substantial terms of which are to artificially fix, increase, maintain, and/or inflate prices paid for the performance and/or broadcast of college sports contests in the United States, its territories and possessions.

35.     And/or, alternately, defendant's contracts, combinations, and relationships consist of a continuing agreement, understanding, and concert of action among the Defendant and its members, vendors, and customers, the substantial terms of which are to artificially fix, depress, maintain, and/or stabilize prices paid for collegiate athletic services in the United States, its territories and possessions.

36.     Defendant's actions have unreasonably restrained competition in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

37.     Said actions include, but are not limited to, preventing college student-athletes like plaintiff that attended Division II schools from competing in a third and fourth year of NCAA Division I football due to prior attendance at a Division II school, therefore limiting their economic opportunities to participate in the NIL marketplace available to Division I athletes, and otherwise unreasonably restrain competition in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

38.     Said actions include, but are not limited to, arbitrarily and capriciously applying defendant's own rules and regulations in the denial of a hardship waiver to plaintiff.

39.     Said actions include, but are not limited to, ignoring defendant's own guidelines for transfers between NCAA member institutions by college student-athletes and denying eligibility waivers when circumstances exist to support the granting of such waivers.

40.     The defendant's conduct impacts interstate commerce.

41.     Defendant's actions have produced and, unless restrained, will continue to produce, the following anti-competitive impact, among others:

   a.     Artificially restrain and depress the number of athletes that participate in college athletics;

   b.     Deprive athletes such as plaintiff of the benefits of competition as to the amount, terms and conditions of grants-in-aid from NCAA member institutions;

   c.     Artificially restrain and depress the ability of athletes to benefit and profit from their name, image, and likeness at the highest level; and

   d.     Artificially restrain competition in name, image, and likeness services among athletes, as well as significant revenue sharing.

42.     As a direct and proximate result of defendant's actions, plaintiff has been, is being, and will continue to be, irreparably injured and financially damaged.

43.     The NCAA's abridgment of the economic rights of plaintiff and similarly situated athletes is a naked, *per se* restraint of trade.

44.     Plaintiff is entitled to recover from the NCAA treble the amount of actual damages as well as an award of reasonable attorneys' fees and costs of suit.

45.     Plaintiff is entitled to a declaratory judgment declaring as void and unenforceable any and all NCAA rules, regulations, bylaws, or decisions that prevent him from playing football at UW-Madison for an additional year under the current system with the waiver and two years if the Sherman Act controls.

46.     Plaintiff is entitled to a permanent injunction that enjoins defendant from engaging in the ongoing violations described in this Complaint.

**COUNT II:**
**UNREASONABLE RESTRAINT OF TRADE IN VIOLATION OF § 1 OF THE**
**SHERMAN ACT, 15 U.S.C. § 1**

47.     Plaintiff incorporates by reference every allegation contained in this Complaint.

48.     As an alternative to Plaintiff's Count I, if the Court determines that defendant's conduct does not constitute, in whole or in part, a *per se* antitrust violation, plaintiff alternatively pleads that defendant's conduct when analyzed, in whole or in part, via the "quick look" "rule of reason" analysis or via the full "rule of reason" antitrust analysis, violates the Sherman Act.

49.     The anti-competitive nature of defendant's actions is so blatant that a detailed review of the surrounding marketplace is unnecessary. Under this analysis, as the Supreme Court has stated, "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anti-competitive effect on customers and markets." *See, California Dental Association v. FTC*, 526 U.S. 756 (1999).

50.     Applying those words to the present case shows that defendant has violated the Sherman Act.

51.     Alternatively, applying a full antitrust analysis of the present case shows that defendant has violated the Sherman Act.

52.     At all relevant times and continuing through the resolution of this case, the NCAA has engaged and continues to engage in contracts, combinations and conspiracies that preclude college student-athletes like plaintiff who attended Division II schools from competing in a third and fourth year of NCAA Division I football due to their prior attendance at a Division II school, and otherwise unreasonably restrain competition in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

53.     Defendant's conduct directly impacts interstate commerce.

54.     These actions organized through the NCAA, which possesses a dominant position in the relevant market, have produced and, unless restrained, will continue to produce, the following anti-competitive effects, among others:

    a.     Artificially restrain and depress the number of athletes that participate in college athletics;

    b.     Deprive athletes such as plaintiff of the benefits of competition as to the amount, terms and conditions of grants-in-aid from NCAA member institutions;

    c.     Artificially restrain and depress the ability of athletes to benefit and profit from their name, image, and likeness at the highest level, as well as significant revenue sharing; and

    d.     Artificially restrain competition in name, image, and likeness services among athletes.

55.     The NCAA's abridgment of plaintiff's economic rights is a restraint of trade, and is not connected to any legitimate non-commercial goals.

56.     The anti-competitive effects of defendant's scheme substantially outweighs any alleged pro-competitive effects or justifications that may be offered by defendant.

57.     Reasonable and less restrictive alternatives are available to defendant's current anti-competitive practices including, but not limited to, allowing all student-athletes the same amount of playing time in a Division I institution so as to not unreasonably restrict their access to the numerous career, NIL, and other benefits available to Division I participants.

58.     Rational, consistent, and unbiased application of its own rules, regulations, policies and procedures would allow for a more reasonable and less restrictive alternative to defendant's current anti-competitive practices.

59.      Plaintiff is entitled to recover from the NCAA treble the amount of actual damages as well as an award of reasonable attorneys' fees and costs of suit.

60.     Plaintiff is entitled to a declaratory judgment declaring as void and unenforceable any and all NCAA rules, regulations, bylaws, or decisions that prevent his playing football at UW-Madison for at least an additional year.

61.     Plaintiff is entitled to a permanent injunction that enjoins defendant from engaging in the ongoing violations described in this Complaint.

**COUNT III:**

**TORTIOUS INTERFERENCE WITH CONTRACT WITH SCHOOL**

62.     Plaintiff incorporates by reference every allegation contained in this Complaint.

63.     Plaintiff has a contractual relationship with UW-Madison.

64.     As part and parcel of that relationship, plaintiff is entitled, and indeed expected, to participate on the varsity football team.

65.     The NCAA was aware of this relationship.

66.     The NCAA has interfered with the relationship between plaintiff and UW-Madison and the expectancies of plaintiff and UW-Madison.

67.     The NCAA's interference includes, but is not limited to, refusing to grant plaintiff a waiver when he is entitled to one, acting arbitrarily and/or capriciously with regard to plaintiff and his eligibility, ignoring his rights, and violating the NCAA's own rules and guidelines.

68.     The NCAA had a duty not to tortiously and/or needlessly interfere in plaintiff's relationships, and especially had a duty not to refuse to follow its own rules, regulations, bylaws, and guidelines, or to act arbitrarily and/or capriciously with regard to him.

69.     The NCAA's interference with the relationship between UW-Madison and plaintiff has harmed and will continue to harm plaintiff.

70.      Plaintiff is entitled to damages for the NCAA's interference.

## COUNT IV:
## TORTIOUS INTERERENCE – OTHER PARTIES

71.     Plaintiff incorporates by reference every allegation contained in this Complaint.

72.     Plaintiff has contractual relationships with third parties for the use of his name, image, and likeness.

73.     As part and parcel of those relationships, plaintiff is expected to be a prominent athlete in the community and the nation as a whole.

74.     The more prominent the plaintiff is as a student-athlete, the more valuable those relationships become.

75.     The NCAA knew or should have known about these relationships.

76.     The NCAA has interfered with these relationships between plaintiff and the expectancies of plaintiff and the third parties.

77.     The NCAA's interference includes, but is not limited to, refusing to grant plaintiff a waiver when he is entitled to one, acting arbitrarily and/or capriciously with regard to plaintiff and his eligibility, ignoring plaintiff's rights, and violating the NCAA's own rules and guidelines.

78.     The NCAA had a duty not to tortiously and/or needlessly interfere in plaintiff's relationships, and especially had a duty not to refuse to follow its own rules, regulations, bylaws, and guidelines, or to act arbitrarily and/or capriciously with regard to plaintiff.

79.     The NCAA's interference with the relationship between third parties and the plaintiff has harmed and will continue to harm plaintiff.

80.     Plaintiff is entitled to damages for the NCAA's interference.

**COUNT V:**
**BREACH OF CONTRACT –THIRD PARTY BENEFICIARY**

81.     Plaintiff incorporates by reference every allegation contained in this Complaint.

82.     "The National Collegiate Athletic Association is a member-led organization dedicated to the well-being and lifelong success of college athletes."[1]

83.     The NCAA is in essence and is formed by a collection of agreements and conventions between its members.

84.     As part and parcel of the agreements that form the NCAA, member institutions must offer certain consideration such as ensuring that student-athletes are in good standing, submit documentation demonstrating compliance with academic programs, and submit financial data to the NCAA.

85.     In exchange, the NCAA offers its member institutions the opportunity to play collegiate sports.

---

[1] NCAA 2021 IRS Form 990.

86.     As such, the NCAA essentially exists as a result of one or more agreements between its members to administer and promote college athletics.

87.     Student-athletes are the purported beneficiaries of these agreements, a point made explicit by the NCAA:

        a.      "With more than 1,100 member colleges and universities, the NCAA is united around one goal, creating opportunities for college athletes."[2]

        b.       "The National Collegiate Athletic Association is a voluntary, self-governing organization of four-year colleges, universities and conferences committed to the well-being and development of student-athletes…"[3]

        c.      "The basic purpose of the Association is to support and promote healthy and safe intercollegiate athletics, including national championships, as an integral part of the education program and the student-athlete as an integral part of the student body."[4]

88.     Thus, even though student-athletes are not parties to the contracts between the NCAA and its member institutions, those agreements were made for the specific benefit of a designated class of which plaintiff is a member.

89.     The NCAA and its member institutions were competent to enter into the agreements that form the NCAA and allow its member institutions access to the college sports market as administered and controlled by the NCAA.

90.     Those agreements are legal, valid, enforceable contracts.

91.     Student athletes such as plaintiff were specifically contemplated as beneficiaries of those agreements.

---

[2] NCAA 2021 IRS Form 990
[3] NCAA Constitution, Preamble.
[4] NCAA Constitution, Preamble.

92.     As part of those agreements, the NCAA agreed—either implicitly or explicitly—that it would make its decisions and enforce its rules in compliance with its stated rules, regulations, bylaws, and guidelines and do so in a non-arbitrary, non-capricious manner.

93.     Any and all necessary conditions and/or precedents, dependent obligations, and/or dependent covenants have been met to enforce that portion of the agreements.

94.     Defendant NCAA breached the agreements when it arbitrarily and capriciously denied plaintiff the ability to play collegiate sports for at least an additional year in contravention of the NCAA's own rules, regulations, bylaws, and guidelines.

95.     Plaintiff has standing to sue defendant for such a breach as a third-party beneficiary to said agreements.

96.     Plaintiff is entitled to defendant's performance under the agreements.

97.     Plaintiff has been harmed and will continue to be harmed by defendant's breaches.

98.     All conditions precedent to filing this breach of contract count have been fulfilled.

### COUNT VI:
### PROMISSORY ESTOPPEL

99.     Plaintiff incorporates by reference every allegation contained in this Complaint.

100.    By promulgating rules, regulations, bylaws, and guidelines the NCAA made certain promises to college student athletes.

101.    By continually espousing that its main goal is a commitment to student athlete welfare, the NCAA made certain promises to college student-athletes.

102.    By granting waivers from its rules and regulations, the NCAA made certain promises to college student-athletes.

103.     Those promises include, but are not limited to, promises that the NCAA would apply its rules, regulations, bylaws, and guidelines uniformly and fairly in a non-arbitrary and non-capricious manner.

104.     Those promises include, but are not limited to, promises that the NCAA would not make arbitrary and capricious decisions when it came to college student athletes' welfare.

105.     Those promises include, but are not limited to, promises that the NCAA would genuinely consider and take into special account situations where adherence to NCAA rules and regulations would harm college student athletes' welfare.

106.     Those promises include, but are not limited to, promises that the NCAA would follow its own guidelines when considering whether to grant waivers from NCAA rules, regulations, and bylaws to college student-athletes.

107.     Those promises include, but are not limited to, promises that the NCAA would genuinely consider requests for waivers from NCAA rules and regulations made by college student-athletes.

108.     College student-athletes, including plaintiff, relied upon these promises.

109.     The NCAA foresaw, or should have foreseen, that college student-athletes such as plaintiff would rely upon those promises.

110.     The plaintiff reasonably relied upon those promises when making decisions regarding attending college.

111.     The plaintiff reasonably relied upon those promises to his detriment.

112.     The plaintiff has been damaged and will continue to be damaged by his reasonable reliance upon the NCAA's promises.

**COUNT VII:**
**ARBITRARY ENFORCEMENT OF RULES,**
**REGULATIONS, AND/OR BYLAWS**

113.    Plaintiff incorporates by reference every allegation contained in this Complaint.

114.    The NCAA is in essence and is formed by a collection of agreements and conventions between its members.

115.    As part of those agreements, the NCAA agreed –either implicitly or explicitly –that it would make its decisions and enforce its rules in compliance with its stated regulations and rules and to do so in a non-arbitrary, non-capricious manner.

116.    Plaintiff is a third-party beneficiary of those agreements.

117.    Plaintiff is directly affected by the NCAA's decisions and enforcement of its rules, and regulations.

118.    Defendant has a duty and obligation to plaintiff to make decisions and enforce NCAA rules in compliance with NCAA stated regulations and rules and to do so in a non-arbitrary, non-capricious, and non-selective manner.

119.    NCAA Bylaws include mechanisms for waiving or exempting an individual or institution from the application of a specific regulation.

120.    Specifically, NCAA Bylaw 14.02.14 states that "[a] A waiver is an action exempting an individual or institution from the application of a specific regulation. A waiver requires formal approval (e.g., an NCAA committee or a conference, as specified in the legislation) based on evidence of compliance with the specified conditions or criteria under which the waiver is authorized or extenuating circumstances."

121.     Plaintiff met the necessary qualifications and applied for a waiver, providing the required documentation, asserting facts and circumstances in accordance with the NCAA guidelines.

122.     However, defendant has issued a formal Decision denying plaintiff's petition for waiver and his request for an additional year of eligibility.

123.     Defendant has arbitrarily, capriciously and selectively enforced Rule 12.8.1.7.1.1.

124.     Upon information and belief, Defendant has granted numerous waivers to student-athletes in Division 1 collegiate athletics under similar circumstances.

125.     Defendant has arbitrarily, capriciously and selectively enforced Rule 12.8.1.7.1.1.

126.     Plaintiff has been irreparably damaged by this arbitrary, capricious and selective enforcement.

127.     Plaintiff is currently, and will continue to be, injured by the defendant's actions.

128.     Pursuant to Fed. R. Civ. P. 57, this Court has the power to "… declare rights, status, and other legal relations whether or not further relief is or could be claimed."

129.     Plaintiff is entitled to a declaratory judgment declaring as void and unenforceable any and all NCAA rules, regulations, bylaws, or decisions that prevent his immediate eligibility to play at least an additional year of football at UW-Madison.

130.     Plaintiff is entitled to a permanent injunction that enjoins defendant from engaging in the ongoing violations described in this Count.

## COUNT VIII:
## DECLARATORY JUDGMENT

131.     Plaintiff incorporates by reference every allegation contained in this Complaint.

132.     Pursuant to Fed. R. Civ. P. 57, this Court has the power to "…declare rights, status, and other legal relations whether or not further relief is or could be claimed."

133.    For the reasons stated above, plaintiff asks this Court to judge, hold, and declare that he has an economic right to market and license his name image and likeness.

134.    For the reasons stated above, plaintiff asks this Court to judge, hold, and declare that he has two more years under the Sherman Act analysis and one more year of eligibility to play varsity football at UW-Madison, under the waiver analysis.

135.    For the reasons stated above, plaintiff asks this Court to judge, hold, and declare that he has a right to be treated fairly by the NCAA.

136.    For the reasons stated above, plaintiff asks this Court to judge, hold, and declare that he has a right to rational, fair, and equitable decisions by the NCAA when applying its rules, regulations, bylaws, and guidelines to him.

## COUNT IX:
## RESTRAINING ORDER AND INJUNCTIVE RELIEF

137.    Plaintiff incorporates by reference every allegation contained in this Complaint.

138.    The harm plaintiff faces as a result of the NCAA's conduct set forth above is irreparable.

139.    The time within which college athletes may compete is limited and no amount of monetary damages can mitigate or undo the harm that comes from being improperly withheld from college athletic contests.

140.    Moreover, by substantially shrinking his Division I playing time, defendant is also irreparably harming plaintiff's chances at playing professionally.

141.    For these reasons plaintiff also seeks an injunction from this Court enjoining the NCAA from enforcing its rules, regulations, and/or bylaws that prevent plaintiff from having two more years of eligibility playing football for UW-Madison.

**WHEREFORE,** Plaintiff demands the following:

a.      An order from this Court enjoining the NCAA from enforcing its rules, regulations, and/or bylaws that prevent Plaintiff from having two more years of eligibility playing football for UW-Madison under the Sherman Act analysis, or one more year under the waiver request;

b.      All damages due to plaintiff as a result of defendant's conduct;

c.      Treble damages pursuant to 15 U.S.C. § 15;

d.      Plaintiff's attorneys' fees, costs and expenses; and

e.      For such other relief that the Court may deem just and equitable.

Dated this 29th day of January, 2025.

                              VON BRIESEN & ROPER, s.c
                              *Attorneys for Plaintiff, Nyzier Fourqurean*


                    By:    *Electronically signed by Michael P. Crooks*
                           Michael P. Crooks
                           State Bar No. 1008918
                           michael.crooks@vonbriesen.com
                           Megan Jerabek
                           State Bar No. 1068921
                           megan.jerabek@vonbriesen.com
                           Maria del Pizzo Sanders
                           State Bar No. 1031037
                           maria.sanders@vonbriesen.com

**P.O. ADDRESS**:
10 East Doty Street
Suite 900
Madison, WI  53703
608-287-3926

42229208_1.DOCX